

Bear Wilner-Nugent, Counselor and Attorney at Law LLC
621 SW Morrison Street, Suite 1250
Portland, Oregon 97205
(503) 351-2327
Fax (503) 323-7356
bwnlaw@gmail.com

## IN THE CIRCUIT COURT OF THE STATE OF OREGON

## FOR THE COUNTY OF MULTNOMAH

| | |
|---|---|
| WHITNEY ANNE-MARIE ORLANDO, ) | Case No. 130812007 |
| ) | |
| Plaintiff, ) | |
| ) | SUMMONS |
| v. ) | |
| ) | |
| PORTLAND STATE UNIVERSITY, an ) | |
| Oregon public university, and MARCIA ) | |
| KLOTZ, ) | |
| Defendants. ) | |

**ATTENTION: YOU ARE BEING SUED FOR MONEY DAMAGES.** You must appear and defend this action within 30 days from the date of service. If you fail to do so, plaintiff will apply to the court for the relief demanded in the attached complaint.

NOTICE TO DEFENDANTS:
READ THESE PAPERS
CAREFULLY!

You must "appear" in this case or the other side will win automatically. To "appear" you must file with the court a legal document called a "motion" or "answer." The "motion" or "answer" must be given to the court clerk or administrator within 30 days along with the required filing fee. It must be in proper form and have proof of service on the plaintiff's attorney or, if the plaintiff does not have an attorney, proof of service on the plaintiff.

If you have questions, you should see an attorney immediately. If you need help in finding an attorney, you may call the Oregon State Bar's Lawyer Referral Service at (503) 684-3763 or toll-free in Oregon at (800) 452-7636.

ISSUED August 19, 2013,

Bear Wilner-Nugent, OSB #044549
Attorney for Plaintiff

**Exhibit 1**
**Page 1 of 38**

AUG 1 9 2013

I HEREBY CERTIFY THAT THE
FOREGOING IS A TRUE COPY
OF THE ORIGINAL.

ATTORNEY FOR ____plaintiff____

1
2
3
4
5
6   Bear Wilner-Nugent, Counselor and Attorney at Law LLC
7   621 SW Morrison Street, Suite 1250
8   Portland, Oregon 97205
9   (503) 351-2327
10  Fax (503) 323-7356
11  bwnlaw@gmail.com
12
13
14              IN THE CIRCUIT COURT OF THE STATE OF OREGON
15
16                   FOR THE COUNTY OF MULTNOMAH
17
18
19  WHITNEY ANNE-MARIE ORLANDO,     )   Case No. ___130812007___
20                                  )
21          Plaintiff,              )
22                                  )   COMPLAINT
23          v.                      )   (Intentional Infliction of Emotional Distress,
24                                  )   Sexual Harassment, Negligence, Retaliation)
25  PORTLAND STATE UNIVERSITY, an   )
26  Oregon public university, and MARCIA )  CLAIM NOT SUBJECT TO
27  KLOTZ,                          )   MANDATORY ARBITRATION
28                                  )
29          Defendants.             )   JURY TRIAL REQUESTED
30                                  )   (amount prayed for: $1,250,000)
31
32  Plaintiff alleges as follows:

33                      GENERAL ALLEGATIONS

34                                  1

35      Defendant Portland State University ("PSU") is an Oregon public university that has at

36  all times mentioned herein actively operated undergraduate and graduate degree-conferring

37  university programs from its campus located in Portland, Multnomah County, Oregon. Prior to

38  January 1, 2012, Oregon state law designated PSU as an agency of the State of Oregon. On

COMPLAINT – Page 1

**Exhibit 1**
**Page 2 of 38**

1    January 1, 2012, Oregon Senate Bill 242 (2011) re-designated PSU as a public university

2    operating under the authority of the Oregon University System.

3                                          2

4           Defendant Marcia Klotz ("Klotz") is an adult who has at all times mentioned herein been

5    employed by PSU as an Assistant Professor in the Department of English, College of Liberal

6    Arts and Sciences. Klotz is and has been at all times relevant an agent and employee of PSU, and

7    all of her acts alleged herein were done within the course and scope of that agency and

8    employment.

9                                          3

10          Plaintiff Whitney Anne-Marie Orlando ("Orlando") is, and has been at all times

11   mentioned herein, an adult residing in the state of Oregon and a student at PSU. Plaintiff

12   began her studies at PSU in 2006.

13                                         4 .

14          On April 4, 2012, PSU adopted and promulgated a Prohibited Discrimination and

15   Harassment Policy, which in part provides as follows:

16   IV. Definitions [...]

17   2.0 Discriminatory Harassment:
18   Discriminatory Harassment means verbal or physical conduct by a student,
19   faculty or staff based on a Protected Class or Protected Classes that is so severe,
20   persistent or pervasive that it unreasonably interferes with or limits a student,
21   faculty, staff, volunteer or PSU community member's ability to participate in or
22   benefit from the university's educational and/or employment opportunities,
23   programs or activities. Discriminatory Harassment includes Sexual Harassment.
24
25   3.0 Sexual Harassment:
26   Sexual Harassment refers to unwelcome sexual advances, requests for sexual
27   favors, and other verbal or physical conduct of a sexual nature when:
28
29          ◦   Submission to such conduct is made either explicitly or implicitly a term
30              or condition of an individual's employment or academic experience; or

COMPLAINT – Page 2

**Exhibit 1**
**Page 3 of 38**

     &deg;   Submission to or rejection of such conduct is used as a basis for employment, salary, or other benefit changes affecting an employee or academic decisions affecting a student; or

     &deg;   Such conduct unreasonably interferes with an individual's work or academic performance or creates an intimidating, hostile, or offensive working environment.

Examples of inappropriate behavior include: sexual or derogatory comments; grabbing or touching parts of the body; and sending letters, notes, cartoons, emails or audio messages of a sexually suggestive nature. Sexual harassment does not refer to occasional compliments of a socially acceptable nature. [...]

V. Policy/Procedures

1.0 Policy.
Discrimination or harassment based on a Protected Class or Protected Classes is strictly prohibited by PSU. [...]

7.0 Non-Retaliation.
No person shall retaliate against an individual for reporting discrimination or harassment, filing a complaint, participating in an investigation, participating in resolution of a complaint or any other activity protected under this policy, regardless of the outcome of the concern or complaint.

Any act of retaliation or reprisal violates this policy and will be treated as a separate matter. Anyone found to have retaliated against someone making use of this policy will be subject to corrective actions, up to and including severance of any relationship with Portland State University.

5

At some time before 2009, PSU adopted and promulgated a Policy Concerning Consensual Relationships, providing in part that:

The University recognizes that two consenting adults should be free to conduct a personal relationship if they so wish; however, if a consensual relationship should develop between an instructor or supervisor and a student or supervisee, where a power differential exists, the instructor or supervisor should report the matter, as soon as possible, to his or her immediate supervisor, i.e.; Department Chair, Professor in charge of the course, the unit supervisor, etc. This immediate supervisor, in consultation with the Director of Affirmative Action, will immediately make arrangements so that the official determination(s) affecting the terms and conditions of employment, study, or progress in a program of the person(s) involved in the consensual relationship can be carried out under the

COMPLAINT – Page 3

**Exhibit 1**
**Page 4 of 38**

direction of a competent objective third party(s). This should be carried out in a manner that maintains the highest degree of confidentiality possible.

It should be made clear that the instructor, mentor, tutor, or supervisor should not, thereafter, be allowed to have undirected responsibility for supervising, evaluating, or grading the consensual relationship partner's performance. This is due to the possibility of residual feelings resulting from the consensual relationship, which could preclude impartiality.

All instructors, supervisors, students, and supervisees should understand that these situations are of concern to Portland State University. It is the instructors and supervisors who, by the virtue of their special power and responsibility, will bear the burden of accountability in such cases. There are substantial risks in an apparently consensual relationship where a power differential exists, even if the conflict of interest issues are resolved, involving potential charges of sexual harassment and/or violations of University policy. Such consensual relationships have the potential for very serious consequences and should be avoided.

Where such relationships cannot be, or are not avoided, this policy mandates the declaration to and intervention by a supervising authority, for the protection of both parties involved in the consensual relationship. [...]

6

During her employment as a professor at PSU, Klotz was obligated by university policy to refrain from engaging in sexual harassment, entering or maintaining a consensual relationship in which a power differential existed, and from supervising the work or academic performance of a relationship partner. Nonetheless, Klotz engaged in an intimate relationship with plaintiff and later supervised plaintiff's academic performance during plaintiff's participation in the Robert E. McNair Scholars Program ("McNair") at PSU.

7

In the professional relationship developed between Klotz and plaintiff, Klotz had actual or apparent authority over plaintiff or the power to affect plaintiff's interests.

8

Plaintiff first met and interacted with Klotz in an English course plaintiff attended

COMPLAINT – Page 4

**Exhibit 1**
**Page 5 of 38**

1   entitled *Feminist Literature*, taught by Klotz in Fall 2007. During PSU's Fall 2009 term, plaintiff

2   attended a seminar taught by Klotz titled *The Erotics of Power*. Klotz's *Erotics of Power* seminar

3   primarily concerned representations in literature of sadomasochism, defined by course materials

4   as a set of erotic practices associated with pain, unequal power relations, and humiliation.

5   Plaintiff also participated in a Spring 2011 independent study class with Klotz entitled *Privacy*

6   *Rights*.

7                                          9

8          In October 2009, plaintiff contacted Klotz via Klotz's PSU e-mail account.

9   Plaintiff's initial e-mails to Klotz discussed topics and materials related to the *Erotics of*

10  *Power* course. In a follow-up E-mail, plaintiff also informed Klotz about a documentary

11  film concerning Insex, a website featuring graphic and pornographic bondage,

12  domination, and sadomasochistic ("BDSM") content, which plaintiff felt was related to

13  materials discussed in Klotz's course. Following Klotz's expressed interest in the topic,

14  plaintiff revealed to Klotz that she had previously worked as a bondage pornography

15  model and provided Klotz with several non-explicit photographs of her head and face

16  taken during plaintiff's most recent modeling shoot. Klotz complimented plaintiff on the

17  photographs, asked questions about the shoot, and expressed interest in attending future

18  modeling sessions involving plaintiff.

19                                         10

20         Between October 2009 and December 2012, plaintiff and Klotz continued to

21  correspond via electronic mail, eventually exchanging over 200 electronic messages

22  concerning subjects ranging from course-related questions and Klotz's professional work

23  to sexual topics, BDSM, and the relationship between plaintiff and Klotz. Klotz's

COMPLAINT – Page 5

**Exhibit 1**
**Page 6 of 38**

1   interactions with plaintiff during this period were designed and intended to encourage

2   plaintiff to share sexually oriented material and sensitive details of plaintiff's sexual life

3   with Klotz. Klotz's interest and participation in plaintiff's sexual life during this time

4   blurred professional and personal boundaries between herself and plaintiff.

5                                    11

6           During e-mail exchanges between the parties starting in 2009, and in response to

7   Klotz's expressed interest in viewing them, plaintiff provided Klotz with a number of

8   pictures depicting plaintiff posing for BDSM-themed websites and/or participating in

9   bondage-related activities. Many of these pictures depicted plaintiff in nude or sexually

10  explicit poses. Klotz encouraged plaintiff to continue sharing materials of a sexual nature

11  by complimenting the photographs, asking questions about their production, and

12  indicating her interest in receiving additional materials from plaintiff.

13                                   12

14          During the parties' 2009 e-mail exchanges, plaintiff described to Klotz how, at the

15  age of 13, she had suffered sexual abuse at the hands of a school instructor, and that this

16  abuse had deeply affected plaintiff's life thereafter. Thus, Klotz knew or should have

17  known that plaintiff would be especially impacted by sexual attention directed to her by

18  an academic supervisor or mentor. Instead of curtailing the sexual aspects of her

19  relationship with plaintiff, however, Klotz encouraged plaintiff to continue sharing

20  information relating to her sexuality and BDSM experiences. During this time, Klotz

21  used plaintiff's connections to producers of BDSM-themed materials in order to find

22  interview subjects and obtain material for inclusion in Klotz's academic papers. Klotz

23  also used plaintiff's connections to persons active in the BDSM community in an attempt

COMPLAINT – Page 6

**Exhibit 1**
**Page 7 of 38**

1    to locate new sexual partners interested in BDSM-style sexual encounters.

2                                    13

3            On January 17, 2010, plaintiff, Klotz, and Klotz's husband gathered to watch a

4    screening of the Insex documentary plaintiff had recommended to Klotz. The sexually

5    charged atmosphere surrounding the documentary viewing and Klotz's treatment of

6    plaintiff during and after this screening led plaintiff to feel that her relationship with

7    Klotz was becoming increasingly romantic and sexualized. Plaintiff was uncomfortable

8    with this escalating level of sexual tension in her relationship with Klotz.

9                                    14

10           Between October 2009 and January 2011, Klotz wrote an academic paper about

11   Insex entitled "It's Not Really Porn: Insex and the Revolution in Technological

12   Interactivity." Klotz informally consulted with plaintiff about the content of the paper and

13   included references to plaintiff in the finished paper. In the paper, Klotz referred to

14   plaintiff as her student and included sensitive information about plaintiff's sexual

15   experiences, although plaintiff was not identified by name.

16                                   15

17           Although Klotz used research about plaintiff's sexual experiences obtained from

18   interacting with plaintiff in Klotz's "It's Not Really Porn" paper, Klotz failed to inform

19   plaintiff in advance that Klotz intended to publicize plaintiff's experiences in the paper.

20   Klotz also failed to obtain plaintiff's informed, written consent to participate in Klotz's

21   research, as required by relevant PSU policy. As a result, Klotz revealed and published

22   private and personal details of plaintiff's intimate life in her academic paper without

23   plaintiff's authorization to do so.

COMPLAINT – Page 7

**Exhibit 1**
**Page 8 of 38**

16

As early as 2009, Klotz admitted to plaintiff that she had allowed her relationship with plaintiff to exceed boundaries of professional decorum. Even though Klotz acknowledged these boundary issues with plaintiff, however, she continued to exchange sexually oriented material with plaintiff and continued to permit plaintiff to disclose information of a sexual nature to her. Although PSU policy required Klotz to disclose her inappropriate relationship with plaintiff to her supervisor, Klotz never so disclosed.

17

In April 2010, Klotz began to route portions of her E-mail correspondence with plaintiff through her personal E-mail account, instead of her university-provided work E-mail account. Klotz's decision to move her correspondence with plaintiff to a private E-mail account allowed Klotz to conceal inappropriate messages and material from her employer PSU. During her e-mail exchanges with plaintiff, Klotz consistently encouraged plaintiff to develop the romantic and sexual aspects of her relationship with Klotz as a method of gaining or maintaining power over plaintiff. Klotz encouraged plaintiff to explore sexual and BDSM-related subjects with her, including discussing aspects of plaintiff's childhood sexual abuse. Klotz admitted to finding plaintiff's earlier sexual abuse erotic, and expressed an interest in replicating aspects of that abuse with plaintiff in a BDSM context. To illustrate her erotic interest in her partners' sexual trauma, Klotz shared with plaintiff details of Klotz's sexual interactions with her submissive male partner that included reenactments of that male partner's childhood sexual abuse at the hands of his father. Plaintiff believed that Klotz was attempting to recruit plaintiff to participate in similar kinds of sexual encounters with Klotz.

COMPLAINT – Page 8

Exhibit 1
Page 9 of 38

18

During her interactions with plaintiff, Klotz used her authority as plaintiff's teacher and mentor in an attempt to influence plaintiff's studies and keep plaintiff academically focused on topics of sexual interest to Klotz. Klotz sought to convince plaintiff that plaintiff would only achieve academic success by continuing to work on BDSM-related topics and by developing a close academic relationship with Klotz. Klotz attempted to harness plaintiff's interest in academic and personal success in order to manipulate plaintiff, to keep plaintiff's relationship with Klotz in a state of sexual and romantic tension, to continue obtaining private sexual information from plaintiff for Klotz's benefit, and to entice plaintiff and gratify Klotz by sharing salacious details of Klotz's sexual life.

19

On January 8, 2010, Klotz notified plaintiff that she wanted to recommend plaintiff for the McNair Scholars Program at PSU. McNair is a program funded by the United States Department of Education, and is designed to prepare undergraduate students from minority or first-generation college student backgrounds for doctoral studies by allowing participation in research and other scholarly activities. In the spring of 2011, plaintiff began to apply for the McNair program. Klotz assisted plaintiff during this process and served as her project mentor.

20

As plaintiff prepared her application for the McNair program, Klotz steered plaintiff toward selecting a paper topic related to reporting sexual abuse of minor children, and specifically toward a project requiring plaintiff to conduct research on her

COMPLAINT – Page 9

**Exhibit 1**
**Page 10 of 38**

1    own past sexual abuse. Even though Klotz was or should have been aware of the risks to

2    plaintiff's psychological state posed by conducting research on her own previously

3    disclosed history of childhood sexual trauma, Klotz nonetheless encouraged plaintiff to

4    undertake the project. Plaintiff submitted her application for the McNair program in the

5    fall of 2011, listing her proposed topic as *Disavowed Power: The Experiences of Early*

6    *Adolescents Reporting Adult-Child Sex to Law Enforcement.* Plaintiff was accepted into

7    the McNair program on November 29, 2011 and officially began work on program

8    requirements on January 1, 2012. Between November 2011 and June 2012, plaintiff and

9    Klotz exchanged a number of e-mails about the McNair project and met to discuss the

10   project in person.

11                                      21

12           In the spring of 2012, plaintiff began to experience significant stress and anxiety

13   triggered by the interaction of her work on her McNair paper and her history of childhood

14   sexual abuse. In order to satisfy Klotz's interest in work relating to plaintiff's history of

15   sexual abuse, plaintiff had obtained and reviewed the trial court's case file created during

16   the criminal prosecution of her middle school teacher, whom plaintiff had accused of

17   molesting her. Many of the documents in the trial court's file contained sensitive or

18   emotionally charged information concerning plaintiff's sexual abuse, some of which

19   plaintiff had never previously seen, and which caused plaintiff significant distress and

20   anxiety. Plaintiff also obtained and reviewed audiotapes of other contemporary child sex

21   abuse prosecutions in Multnomah County, which again caused plaintiff to experience

22   anxiety and stress resulting from her own history of abuse.

23

COMPLAINT – Page 10

**Exhibit 1**
**Page 11 of 38**

22

During this period of research in Spring 2012, plaintiff began to reassess her personal life and academic work for the McNair program. Plaintiff realized that she was uncomfortable with the heavily sexual tone of her relationship with Klotz, and that Klotz's insensitivity to plaintiff's childhood sexual trauma and pressure to complete plaintiff's McNair research on sexually explicit topics amounted to sexual harassment. Plaintiff attempted to step back from her relationship with Klotz, including by deescalating the sexual tension in their relationship and reevaluating the scope of her McNair childhood sexual abuse research.

23

After plaintiff attempted to rein in her sexually charged relationship with Klotz and to shift the focus of her McNair research away from childhood sexual abuse, plaintiff found that Klotz was no longer interested in providing her with mentorship or assistance in completing the McNair program. Although McNair program guidelines provide that professor mentors should work intensively with their McNair supervisees and meet approximately once per week, Klotz failed to properly supervise plaintiff's work during the summer of 2012, and plaintiff and Klotz met to discuss plaintiff's McNair project no more than once during that period.

24

On September 28, 2012, plaintiff e-mailed Klotz to inform her that plaintiff had been admitted to the hospital and was suffering from anxiety symptoms including an irregular heart rate. Plaintiff attributed these symptoms to stress caused by the stress of researching topics related to her childhood sexual abuse, and discussed the possibility of

COMPLAINT – Page 11

**Exhibit 1**
**Page 12 of 38**

1   modifying her McNair project to find a topic that would be less stressful and easier to

2   complete. Plaintiff asked Klotz to request an extension of the project's due date and to

3   change the topic of her paper. Plaintiff's extension request was eventually granted, but

4   plaintiff continued to feel pressure from Klotz to complete the McNair project on the

5   original topic of sexual abuse.

6                           25

7         Following plaintiff's hospitalization and Klotz's continuing pressure thereafter to

8   complete a paper related to her sexual abuse, plaintiff realized that she would have to

9   cease contact with Klotz in order to protect her physical and mental health. Plaintiff

10   began to distance herself from Klotz by ceasing E-mail contact with her and looking for

11   alternative topics to write about for her McNair paper. On December 20, 2012, plaintiff

12   e-mailed Klotz to inform her that she could no longer conduct research into the child

13   sexual abuse topic she had previously been working on, and was interested in changing

14   her research focus to consider experimental research designs for stress management. On

15   January 31, 2013, plaintiff e-mailed Klotz to inform her that plaintiff had completed an

16   alternate project in the field of Predictive Analytics under the tutelage of another mentor,

17   a government research scientist. Plaintiff also sought approval from PSU's McNair

18   program to conclude Klotz's role as her McNair mentor. On February 7, 2013, plaintiff e-

19   mailed Klotz a letter from her new project mentor along with a copy of the McNair paper

20   plaintiff had written entitled "Indication and Warning Methodology."

21                           26

22         On February 15, 2013, Klotz e-mailed plaintiff to inform her that Klotz would not

23   accept plaintiff's "Indication and Warning Methodology" project for McNair program

COMPLAINT – Page 12

**Exhibit 1**
**Page 13 of 38**

1    credit. Instead, Klotz recommended that plaintiff complete research on resources

2    available to women in the Portland area who are leaving sex work or on her original

3    topic. Klotz also recommended that plaintiff submit an explanation she wrote for a

4    McNair presentation of her original topic. Klotz subsequently contacted PSU's McNair

5    program coordinator and indicated that Klotz would not approve plaintiff's project, as it

6    allegedly did not meet the program's academic requirements. However, Klotz never

7    identified which of the McNair academic requirements were not met by plaintiff's

8    project. Klotz also told plaintiff and PSU's McNair program coordinator that she believed

9    plaintiff's paper had been plagiarized, in that she thought the paper did not resemble

10   plaintiff's writing and was too polished for plaintiff to have completed on her own.

11                                    27

12           As a direct and proximate result of defendants' conduct as alleged above,

13   plaintiff was subjected to such extreme stress and anxiety during the course of her

14   McNair research that she was hospitalized with physiological responses to that stress

15   including an irregular heartbeat. Plaintiff's senses of wellbeing, self-worth, and trust in

16   her academic supervisors have been irremediably injured by Klotz's ongoing campaign

17   of sexual exploitation. Plaintiff has been publicly embarrassed and humiliated and

18   incurred injury to her reputation in her academic and professional community. Further,

19   plaintiff suffered additional stress, anxiety, humiliation, and worry when Klotz

20   summarily rejected her McNair project because it did not reflect the sexually themed

21   subjects of interest to Klotz. Finally, plaintiff's sense of well-being and self-worth has

22   been shattered, and her ability to engage in healthy, adult relationships has been

23   compromised by Klotz's manipulation. Plaintiff has incurred economic damages for lost

COMPLAINT – Page 13

**Exhibit 1**
**Page 14 of 38**

1  future income potential in the amount of $250,000 and noneconomic damages in the

2  amount of $1,000,000, exclusive of her attorney fees and costs.

3

4  FIRST CLAIM FOR RELIEF

5  (Intentional Infliction of Emotional Distress)

6  28

7  Plaintiff re-alleges and incorporates each allegation contained in paragraphs 1-27.

8  29

9  The above-described conduct by Klotz constituted an extraordinary transgression of the

10  bounds of socially tolerable conduct, and was intended to cause severe emotional distress, or, in

11  the alternative, was done with knowledge that such distress was substantially certain to result.

12  30

13  This conduct did cause severe emotional distress, including physical illness, to plaintiff,

14  including the consequences set forth in paragraph 27.

15  31

16  Therefore, plaintiff is entitled to economic damages in the amount of $250,000 and

17  noneconomic damages in the amount of $1,000,000.

18

19  SECOND CLAIM FOR RELIEF

20  (Sexual Harassment – State Law)

21  32

22  Plaintiff re-alleges and incorporates each allegation contained in paragraphs 1-27.

23

COMPLAINT – Page 14

**Exhibit 1**
**Page 15 of 38**

33

PSU is a place of public accommodation within the meaning of ORS 659A.400(1).

34

The above-described conduct by defendants constituted the denial of full and equal accommodations, advantages, facilities and privileges in a place of public accommodation on the basis of sex, in violation of ORS 659A.403(3).

35

Each named defendant aided and abetted each other named defendant, and all of them, in making a distinction, discrimination, or restriction against plaintiff's enjoyment of the public accommodation afforded by PSU on account of sex, in violation of ORS 659A.406.

36

This denial, distinction, discrimination, or restriction injured plaintiff as described in paragraph 27.

37

Therefore, plaintiff is entitled to economic damages in the amount of $250,000 and noneconomic damages in the amount of $1,000,000.

THIRD CLAIM FOR RELIEF

(Sexual Harassment – Federal Law)

38

Plaintiff re-alleges and incorporates each allegation contained in paragraphs 1-27.

39

PSU receives funds from the United States government in the form of grants and loans to

COMPLAINT – Page 15

**Exhibit 1**
**Page 16 of 38**

1   support its students' education.

2                                   40

3        Plaintiff, while a PSU student, was subjected to discrimination based on sex, including

4   sexual abuse and sexual harassment, that was so severe, pervasive, and objectively offensive that

5   it deprived plaintiff of access to the educational opportunities or benefits provided by PSU, in

6   violation of 20 USC §1681 *et seq*.

7                                   41

8        PSU and its agents and employees had actual knowledge of this discrimination.

9                                   42

10       PSU and its agents and employees were deliberately indifferent to this discrimination.

11                                  43

12       This discrimination injured plaintiff as described in paragraph 27.

13                                  44

14       Therefore, plaintiff is entitled to economic damages in the amount of $250,000,

15   noneconomic damages in the amount of $1,000,000, and payment by PSU of her reasonable and

16   necessary attorney fees.

17

18                          FOURTH CLAIM FOR RELIEF

19                                (Negligence)

20                                  45

21       Plaintiff re-alleges and incorporates each allegation contained in paragraphs 1-27.

22                                  46

23       PSU and its agents had a duty to refrain from hiring and retaining employees who would

COMPLAINT – Page 16

**Exhibit 1**
**Page 17 of 38**

1    sexually harass PSU's students and a duty to supervise its employees in a manner such that they

2    would refrain from sexually harassing PSU's students.

3                                              47

4         The above-described conduct constituted a breach of those duties by PSU.

5                                              48

6         This breach caused injuries to plaintiff as described in paragraph 27.

7                                              49

8         Therefore, plaintiff is entitled to economic damages in the amount of $250,000 and

9    noneconomic damages in the amount of $1,000,000.

10

11                              FIFTH CLAIM FOR RELIEF

12                                      (Retaliation)

13                                             50

14        Plaintiff re-alleges and incorporates each allegation contained in paragraphs 1-27.

15                                             51

16        Klotz's rejection of plaintiff's research paper and subsequent baseless accusations of

17   plagiarism and dishonesty constituted retaliation against plaintiff, as Klotz's actions were

18   calculated to injure and defame plaintiff after plaintiff refused to permit further sexual

19   harassment by Klotz.

20                                             52

21        Klotz's rejection of plaintiff's research paper and subsequent accusations of academic

22   dishonesty caused plaintiff injuries as described in paragraph 27.

23

COMPLAINT – Page 17

**Exhibit 1**
**Page 18 of 38**

1                                          53

2          Therefore, plaintiff is entitled to economic damages in the amount of $250,000 and

3    noneconomic damages in the amount of $1,000,000.

4

5                                   PRAYER FOR RELIEF

6                                          54

7          WHEREFORE, plaintiff prays for judgment against defendants Portland State University

8    and Marcia Klotz in the amount of $250,000 in economic damages, $1,000,000 in noneconomic

9    damages, and her reasonable attorney fees and costs and disbursements necessarily incurred

10   herein.

11                                         55

12         FURTHER, plaintiff hereby gives notice of her intent to move to amend this complaint

13   pursuant to ORS 31.725 to add a request for an award of punitive damages against Klotz.

14

15         RESPECTFULLY SUBMTTED August 19, 2013,
16
                                          Bear Wilner-Nugent, OSB #044549
                                          Attorney for Plaintiff

17

COMPLAINT – Page 18

**Exhibit 1**
**Page 19 of 38**

Bear Wilner-Nugent, Counselor and Attorney at Law LLC
621 SW Morrison Street, Suite 1250
Portland, Oregon 97205
(503) 351-2327
Fax (503) 323-7356
bwnlaw@gmail.com

## IN THE CIRCUIT COURT OF THE STATE OF OREGON

### FOR THE COUNTY OF MULTNOMAH

| | |
|---|---|
| WHITNEY ANNE-MARIE ORLANDO, ) | Case No. 1308 12007 |
| ) | |
| Plaintiff, ) | |
| ) | SUMMONS |
| v. ) | |
| ) | |
| PORTLAND STATE UNIVERSITY, an ) | |
| Oregon public university, and MARCIA ) | |
| KLOTZ, ) | |
| Defendants. ) | |

**ATTENTION: YOU ARE BEING SUED FOR MONEY DAMAGES.** You must appear and defend this action within 30 days from the date of service. If you fail to do so, plaintiff will apply to the court for the relief demanded in the attached complaint.

NOTICE TO DEFENDANTS:
READ THESE PAPERS
CAREFULLY!

You must "appear" in this case or the other side will win automatically. To "appear" you must file with the court a legal document called a "motion" or "answer." The "motion" or "answer" must be given to the court clerk or administrator within 30 days along with the required filing fee. It must be in proper form and have proof of service on the plaintiff's attorney or, if the plaintiff does not have an attorney, proof of service on the plaintiff.

If you have questions, you should see an attorney immediately. If you need help in finding an attorney, you may call the Oregon State Bar's Lawyer Referral Service at (503) 684-3763 or toll-free in Oregon at (800) 452-7636.

ISSUED August 19, 2013,

Bear Wilner-Nugent, OSB #044549
Attorney for Plaintiff

**Exhibit 1**
**Page 20 of 38**

AUG 19 2013

1
2
3
4
5
6    Bear Wilner-Nugent, Counselor and Attorney at Law LLC
7    621 SW Morrison Street, Suite 1250
8    Portland, Oregon 97205
9    (503) 351-2327
10   Fax (503) 323-7356
11   bwnlaw@gmail.com
12
13
14              IN THE CIRCUIT COURT OF THE STATE OF OREGON
15
16                   FOR THE COUNTY OF MULTNOMAH
17
18
19   WHITNEY ANNE-MARIE ORLANDO,     )     Case No. __130812007__
20                                   )
21              Plaintiff,           )     COMPLAINT
22                                   )     (Intentional Infliction of Emotional Distress,
23        v.                         )     Sexual Harassment, Negligence, Retaliation)
24                                   )
25   PORTLAND STATE UNIVERSITY, an   )     CLAIM NOT SUBJECT TO
26   Oregon public university, and MARCIA )  MANDATORY ARBITRATION
27   KLOTZ,                          )
28                                   )     JURY TRIAL REQUESTED
29              Defendants.          )     (amount prayed for: $1,250,000)
30   _____ )
31

32   Plaintiff alleges as follows:

33                        GENERAL ALLEGATIONS

34                                   1

35        Defendant Portland State University ("PSU") is an Oregon public university that has at

36   all times mentioned herein actively operated undergraduate and graduate degree-conferring

37   university programs from its campus located in Portland, Multnomah County, Oregon. Prior to

38   January 1, 2012, Oregon state law designated PSU as an agency of the State of Oregon. On

COMPLAINT – Page 1

**Exhibit 1
Page 21 of 38**

1   January 1, 2012, Oregon Senate Bill 242 (2011) re-designated PSU as a public university

2   operating under the authority of the Oregon University System.

3                                      2

4           Defendant Marcia Klotz ("Klotz") is an adult who has at all times mentioned herein been

5   employed by PSU as an Assistant Professor in the Department of English, College of Liberal

6   Arts and Sciences. Klotz is and has been at all times relevant an agent and employee of PSU, and

7   all of her acts alleged herein were done within the course and scope of that agency and

8   employment.

9                                      3

10          Plaintiff Whitney Anne-Marie Orlando ("Orlando") is, and has been at all times

11  mentioned herein, an adult residing in the state of Oregon and a student at PSU. Plaintiff

12  began her studies at PSU in 2006.

13                                     4 .

14          On April 4, 2012, PSU adopted and promulgated a Prohibited Discrimination and

15  Harassment Policy, which in part provides as follows:

16      IV. Definitions […]

17      2.0 Discriminatory Harassment:
18      Discriminatory Harassment means verbal or physical conduct by a student,
19      faculty or staff based on a Protected Class or Protected Classes that is so severe,
20      persistent or pervasive that it unreasonably interferes with or limits a student,
21      faculty, staff, volunteer or PSU community member's ability to participate in or
22      benefit from the university's educational and/or employment opportunities,
23      programs or activities. Discriminatory Harassment includes Sexual Harassment.
24
25      3.0 Sexual Harassment:
26      Sexual Harassment refers to unwelcome sexual advances, requests for sexual
27      favors, and other verbal or physical conduct of a sexual nature when:
28
29          ○   Submission to such conduct is made either explicitly or implicitly a term
30              or condition of an individual's employment or academic experience; or

COMPLAINT – Page 2

**Exhibit 1**
**Page 22 of 38**

      °   Submission to or rejection of such conduct is used as a basis for employment, salary, or other benefit changes affecting an employee or academic decisions affecting a student; or

      °   Such conduct unreasonably interferes with an individual's work or academic performance or creates an intimidating, hostile, or offensive working environment.

Examples of inappropriate behavior include: sexual or derogatory comments; grabbing or touching parts of the body; and sending letters, notes, cartoons, emails or audio messages of a sexually suggestive nature. Sexual harassment does not refer to occasional compliments of a socially acceptable nature. [...]

V. Policy/Procedures

1.0 Policy.
Discrimination or harassment based on a Protected Class or Protected Classes is strictly prohibited by PSU. [...]

7.0 Non-Retaliation.
No person shall retaliate against an individual for reporting discrimination or harassment, filing a complaint, participating in an investigation, participating in resolution of a complaint or any other activity protected under this policy, regardless of the outcome of the concern or complaint.

Any act of retaliation or reprisal violates this policy and will be treated as a separate matter. Anyone found to have retaliated against someone making use of this policy will be subject to corrective actions, up to and including severance of any relationship with Portland State University.

5

At some time before 2009, PSU adopted and promulgated a Policy Concerning

Consensual Relationships, providing in part that:

The University recognizes that two consenting adults should be free to conduct a personal relationship if they so wish; however, if a consensual relationship should develop between an instructor or supervisor and a student or supervisee, where a power differential exists, the instructor or supervisor should report the matter, as soon as possible, to his or her immediate supervisor, i.e.; Department Chair, Professor in charge of the course, the unit supervisor, etc. This immediate supervisor, in consultation with the Director of Affirmative Action, will immediately make arrangements so that the official determination(s) affecting the terms and conditions of employment, study, or progress in a program of the person(s) involved in the consensual relationship can be carried out under the

COMPLAINT – Page 3

**Exhibit 1**
**Page 23 of 38**

1    direction of a competent objective third party(s). This should be carried out in a
2    manner that maintains the highest degree of confidentiality possible.
3
4    It should be made clear that the instructor, mentor, tutor, or supervisor should not,
5    thereafter, be allowed to have undirected responsibility for supervising,
6    evaluating, or grading the consensual relationship partner's performance. This is
7    due to the possibility of residual feelings resulting from the consensual
8    relationship, which could preclude impartiality.
9
10   All instructors, supervisors, students, and supervisees should understand that these
11   situations are of concern to Portland State University. It is the instructors and
12   supervisors who, by the virtue of their special power and responsibility, will bear
13   the burden of accountability in such cases. There are substantial risks in an
14   apparently consensual relationship where a power differential exists, even if the
15   conflict of interest issues are resolved, involving potential charges of sexual
16   harassment and/or violations of University policy. Such consensual relationships
17   have the potential for very serious consequences and should be avoided.
18
19   Where such relationships cannot be, or are not avoided, this policy mandates the
20   declaration to and intervention by a supervising authority, for the protection of
21   both parties involved in the consensual relationship. [...]
22
23                                    6

24        During her employment as a professor at PSU, Klotz was obligated by university policy

25   to refrain from engaging in sexual harassment, entering or maintaining a consensual relationship

26   in which a power differential existed, and from supervising the work or academic performance of

27   a relationship partner. Nonetheless, Klotz engaged in an intimate relationship with plaintiff and

28   later supervised plaintiff's academic performance during plaintiff's participation in the Robert E.

29   McNair Scholars Program ("McNair") at PSU.

30                                    7

31        In the professional relationship developed between Klotz and plaintiff, Klotz had actual

32   or apparent authority over plaintiff or the power to affect plaintiff's interests.

33                                    8

34        Plaintiff first met and interacted with Klotz in an English course plaintiff attended

COMPLAINT – Page 4

**Exhibit 1**
**Page 24 of 38**

1    entitled *Feminist Literature*, taught by Klotz in Fall 2007. During PSU's Fall 2009 term, plaintiff

2    attended a seminar taught by Klotz titled *The Erotics of Power*. Klotz's *Erotics of Power* seminar

3    primarily concerned representations in literature of sadomasochism, defined by course materials

4    as a set of erotic practices associated with pain, unequal power relations, and humiliation.

5    Plaintiff also participated in a Spring 2011 independent study class with Klotz entitled *Privacy*

6    *Rights*.

7                                                    9

8           In October 2009, plaintiff contacted Klotz via Klotz's PSU e-mail account.

9    Plaintiff's initial e-mails to Klotz discussed topics and materials related to the *Erotics of*

10   *Power* course. In a follow-up E-mail, plaintiff also informed Klotz about a documentary

11   film concerning Insex, a website featuring graphic and pornographic bondage,

12   domination, and sadomasochistic ("BDSM") content, which plaintiff felt was related to

13   materials discussed in Klotz's course. Following Klotz's expressed interest in the topic,

14   plaintiff revealed to Klotz that she had previously worked as a bondage pornography

15   model and provided Klotz with several non-explicit photographs of her head and face

16   taken during plaintiff's most recent modeling shoot. Klotz complimented plaintiff on the

17   photographs, asked questions about the shoot, and expressed interest in attending future

18   modeling sessions involving plaintiff.

19                                                   10

20          Between October 2009 and December 2012, plaintiff and Klotz continued to

21   correspond via electronic mail, eventually exchanging over 200 electronic messages

22   concerning subjects ranging from course-related questions and Klotz's professional work

23   to sexual topics, BDSM, and the relationship between plaintiff and Klotz. Klotz's

COMPLAINT – Page 5

**Exhibit 1**
**Page 25 of 38**

1    interactions with plaintiff during this period were designed and intended to encourage

2    plaintiff to share sexually oriented material and sensitive details of plaintiff's sexual life

3    with Klotz. Klotz's interest and participation in plaintiff's sexual life during this time

4    blurred professional and personal boundaries between herself and plaintiff.

5                                   11

6           During e-mail exchanges between the parties starting in 2009, and in response to

7    Klotz's expressed interest in viewing them, plaintiff provided Klotz with a number of

8    pictures depicting plaintiff posing for BDSM-themed websites and/or participating in

9    bondage-related activities. Many of these pictures depicted plaintiff in nude or sexually

10   explicit poses. Klotz encouraged plaintiff to continue sharing materials of a sexual nature

11   by complimenting the photographs, asking questions about their production, and

12   indicating her interest in receiving additional materials from plaintiff.

13                                  12

14          During the parties' 2009 e-mail exchanges, plaintiff described to Klotz how, at the

15   age of 13, she had suffered sexual abuse at the hands of a school instructor, and that this

16   abuse had deeply affected plaintiff's life thereafter. Thus, Klotz knew or should have

17   known that plaintiff would be especially impacted by sexual attention directed to her by

18   an academic supervisor or mentor. Instead of curtailing the sexual aspects of her

19   relationship with plaintiff, however, Klotz encouraged plaintiff to continue sharing

20   information relating to her sexuality and BDSM experiences. During this time, Klotz

21   used plaintiff's connections to producers of BDSM-themed materials in order to find

22   interview subjects and obtain material for inclusion in Klotz's academic papers. Klotz

23   also used plaintiff's connections to persons active in the BDSM community in an attempt

COMPLAINT – Page 6

**Exhibit 1**
**Page 26 of 38**

1    to locate new sexual partners interested in BDSM-style sexual encounters.

2                                    13

3            On January 17, 2010, plaintiff, Klotz, and Klotz's husband gathered to watch a

4    screening of the Insex documentary plaintiff had recommended to Klotz. The sexually

5    charged atmosphere surrounding the documentary viewing and Klotz's treatment of

6    plaintiff during and after this screening led plaintiff to feel that her relationship with

7    Klotz was becoming increasingly romantic and sexualized. Plaintiff was uncomfortable

8    with this escalating level of sexual tension in her relationship with Klotz.

9                                    14

10           Between October 2009 and January 2011, Klotz wrote an academic paper about

11   Insex entitled "It's Not Really Porn: Insex and the Revolution in Technological

12   Interactivity." Klotz informally consulted with plaintiff about the content of the paper and

13   included references to plaintiff in the finished paper. In the paper, Klotz referred to

14   plaintiff as her student and included sensitive information about plaintiff's sexual

15   experiences, although plaintiff was not identified by name.

16                                   15

17           Although Klotz used research about plaintiff's sexual experiences obtained from

18   interacting with plaintiff in Klotz's "It's Not Really Porn" paper, Klotz failed to inform

19   plaintiff in advance that Klotz intended to publicize plaintiff's experiences in the paper.

20   Klotz also failed to obtain plaintiff's informed, written consent to participate in Klotz's

21   research, as required by relevant PSU policy. As a result, Klotz revealed and published

22   private and personal details of plaintiff's intimate life in her academic paper without

23   plaintiff's authorization to do so.

COMPLAINT – Page 7

**Exhibit 1**
**Page 27 of 38**

1

16

2    As early as 2009, Klotz admitted to plaintiff that she had allowed her relationship

3    with plaintiff to exceed boundaries of professional decorum. Even though Klotz

4    acknowledged these boundary issues with plaintiff, however, she continued to exchange

5    sexually oriented material with plaintiff and continued to permit plaintiff to disclose

6    information of a sexual nature to her. Although PSU policy required Klotz to disclose her

7    inappropriate relationship with plaintiff to her supervisor, Klotz never so disclosed.

8

17

9    In April 2010, Klotz began to route portions of her E-mail correspondence with

10   plaintiff through her personal E-mail account, instead of her university-provided work E-

11   mail account. Klotz's decision to move her correspondence with plaintiff to a private E-

12   mail account allowed Klotz to conceal inappropriate messages and material from her

13   employer PSU. During her e-mail exchanges with plaintiff, Klotz consistently

14   encouraged plaintiff to develop the romantic and sexual aspects of her relationship with

15   Klotz as a method of gaining or maintaining power over plaintiff. Klotz encouraged

16   plaintiff to explore sexual and BDSM-related subjects with her, including discussing

17   aspects of plaintiff's childhood sexual abuse. Klotz admitted to finding plaintiff's earlier

18   sexual abuse erotic, and expressed an interest in replicating aspects of that abuse with

19   plaintiff in a BDSM context. To illustrate her erotic interest in her partners' sexual

20   trauma, Klotz shared with plaintiff details of Klotz's sexual interactions with her

21   submissive male partner that included reenactments of that male partner's childhood

22   sexual abuse at the hands of his father. Plaintiff believed that Klotz was attempting to

23   recruit plaintiff to participate in similar kinds of sexual encounters with Klotz.

COMPLAINT – Page 8

**Exhibit 1**
**Page 28 of 38**

18

During her interactions with plaintiff, Klotz used her authority as plaintiff's teacher and mentor in an attempt to influence plaintiff's studies and keep plaintiff academically focused on topics of sexual interest to Klotz. Klotz sought to convince plaintiff that plaintiff would only achieve academic success by continuing to work on BDSM-related topics and by developing a close academic relationship with Klotz. Klotz attempted to harness plaintiff's interest in academic and personal success in order to manipulate plaintiff, to keep plaintiff's relationship with Klotz in a state of sexual and romantic tension, to continue obtaining private sexual information from plaintiff for Klotz's benefit, and to entice plaintiff and gratify Klotz by sharing salacious details of Klotz's sexual life.

19

On January 8, 2010, Klotz notified plaintiff that she wanted to recommend plaintiff for the McNair Scholars Program at PSU. McNair is a program funded by the United States Department of Education, and is designed to prepare undergraduate students from minority or first-generation college student backgrounds for doctoral studies by allowing participation in research and other scholarly activities. In the spring of 2011, plaintiff began to apply for the McNair program. Klotz assisted plaintiff during this process and served as her project mentor.

20

As plaintiff prepared her application for the McNair program, Klotz steered plaintiff toward selecting a paper topic related to reporting sexual abuse of minor children, and specifically toward a project requiring plaintiff to conduct research on her

COMPLAINT – Page 9

**Exhibit 1**
**Page 29 of 38**

1    own past sexual abuse. Even though Klotz was or should have been aware of the risks to

2    plaintiff's psychological state posed by conducting research on her own previously

3    disclosed history of childhood sexual trauma, Klotz nonetheless encouraged plaintiff to

4    undertake the project. Plaintiff submitted her application for the McNair program in the

5    fall of 2011, listing her proposed topic as *Disavowed Power: The Experiences of Early*

6    *Adolescents Reporting Adult-Child Sex to Law Enforcement.* Plaintiff was accepted into

7    the McNair program on November 29, 2011 and officially began work on program

8    requirements on January 1, 2012. Between November 2011 and June 2012, plaintiff and

9    Klotz exchanged a number of e-mails about the McNair project and met to discuss the

10    project in person.

11                          21

12         In the spring of 2012, plaintiff began to experience significant stress and anxiety

13    triggered by the interaction of her work on her McNair paper and her history of childhood

14    sexual abuse. In order to satisfy Klotz's interest in work relating to plaintiff's history of

15    sexual abuse, plaintiff had obtained and reviewed the trial court's case file created during

16    the criminal prosecution of her middle school teacher, whom plaintiff had accused of

17    molesting her. Many of the documents in the trial court's file contained sensitive or

18    emotionally charged information concerning plaintiff's sexual abuse, some of which

19    plaintiff had never previously seen, and which caused plaintiff significant distress and

20    anxiety. Plaintiff also obtained and reviewed audiotapes of other contemporary child sex

21    abuse prosecutions in Multnomah County, which again caused plaintiff to experience

22    anxiety and stress resulting from her own history of abuse.

23

COMPLAINT – Page 10

**Exhibit 1**
**Page 30 of 38**

22

1          During this period of research in Spring 2012, plaintiff began to reassess her

2   personal life and academic work for the McNair program. Plaintiff realized that she was

3   uncomfortable with the heavily sexual tone of her relationship with Klotz, and that

4   Klotz's insensitivity to plaintiff's childhood sexual trauma and pressure to complete

5   plaintiff's McNair research on sexually explicit topics amounted to sexual harassment.

6   Plaintiff attempted to step back from her relationship with Klotz, including by

7   deescalating the sexual tension in their relationship and reevaluating the scope of her

8   McNair childhood sexual abuse research.

23

9          After plaintiff attempted to rein in her sexually charged relationship with Klotz

10  and to shift the focus of her McNair research away from childhood sexual abuse, plaintiff

11  found that Klotz was no longer interested in providing her with mentorship or assistance

12  in completing the McNair program. Although McNair program guidelines provide that

13  professor mentors should work intensively with their McNair supervisees and meet

14  approximately once per week, Klotz failed to properly supervise plaintiff's work during

15  the summer of 2012, and plaintiff and Klotz met to discuss plaintiff's McNair project no

16  more than once during that period.

24

17         On September 28, 2012, plaintiff e-mailed Klotz to inform her that plaintiff had

18  been admitted to the hospital and was suffering from anxiety symptoms including an

19  irregular heart rate. Plaintiff attributed these symptoms to stress caused by the stress of

20  researching topics related to her childhood sexual abuse, and discussed the possibility of

COMPLAINT – Page 11

**Exhibit 1**
**Page 31 of 38**

1  modifying her McNair project to find a topic that would be less stressful and easier to

2  complete. Plaintiff asked Klotz to request an extension of the project's due date and to

3  change the topic of her paper. Plaintiff's extension request was eventually granted, but

4  plaintiff continued to feel pressure from Klotz to complete the McNair project on the

5  original topic of sexual abuse.

6                                    25

7         Following plaintiff's hospitalization and Klotz's continuing pressure thereafter to

8  complete a paper related to her sexual abuse, plaintiff realized that she would have to

9  cease contact with Klotz in order to protect her physical and mental health. Plaintiff

10  began to distance herself from Klotz by ceasing E-mail contact with her and looking for

11  alternative topics to write about for her McNair paper. On December 20, 2012, plaintiff

12  e-mailed Klotz to inform her that she could no longer conduct research into the child

13  sexual abuse topic she had previously been working on, and was interested in changing

14  her research focus to consider experimental research designs for stress management. On

15  January 31, 2013, plaintiff e-mailed Klotz to inform her that plaintiff had completed an

16  alternate project in the field of Predictive Analytics under the tutelage of another mentor,

17  a government research scientist. Plaintiff also sought approval from PSU's McNair

18  program to conclude Klotz's role as her McNair mentor. On February 7, 2013, plaintiff e-

19  mailed Klotz a letter from her new project mentor along with a copy of the McNair paper

20  plaintiff had written entitled "Indication and Warning Methodology."

21                                    26

22         On February 15, 2013, Klotz e-mailed plaintiff to inform her that Klotz would not

23  accept plaintiff's "Indication and Warning Methodology" project for McNair program

COMPLAINT – Page 12

Exhibit 1
Page 32 of 38

1 | credit. Instead, Klotz recommended that plaintiff complete research on resources

2 | available to women in the Portland area who are leaving sex work or on her original

3 | topic. Klotz also recommended that plaintiff submit an explanation she wrote for a

4 | McNair presentation of her original topic. Klotz subsequently contacted PSU's McNair

5 | program coordinator and indicated that Klotz would not approve plaintiff's project, as it

6 | allegedly did not meet the program's academic requirements. However, Klotz never

7 | identified which of the McNair academic requirements were not met by plaintiff's

8 | project. Klotz also told plaintiff and PSU's McNair program coordinator that she believed

9 | plaintiff's paper had been plagiarized, in that she thought the paper did not resemble

10 | plaintiff's writing and was too polished for plaintiff to have completed on her own.

11 | 27

12 | As a direct and proximate result of defendants' conduct as alleged above,

13 | plaintiff was subjected to such extreme stress and anxiety during the course of her

14 | McNair research that she was hospitalized with physiological responses to that stress

15 | including an irregular heartbeat. Plaintiff's senses of wellbeing, self-worth, and trust in

16 | her academic supervisors have been irremediably injured by Klotz's ongoing campaign

17 | of sexual exploitation. Plaintiff has been publicly embarrassed and humiliated and

18 | incurred injury to her reputation in her academic and professional community. Further,

19 | plaintiff suffered additional stress, anxiety, humiliation, and worry when Klotz

20 | summarily rejected her McNair project because it did not reflect the sexually themed

21 | subjects of interest to Klotz. Finally, plaintiff's sense of well-being and self-worth has

22 | been shattered, and her ability to engage in healthy, adult relationships has been

23 | compromised by Klotz's manipulation. Plaintiff has incurred economic damages for lost

COMPLAINT – Page 13

**Exhibit 1**
**Page 33 of 38**

1  future income potential in the amount of $250,000 and noneconomic damages in the

2  amount of $1,000,000, exclusive of her attorney fees and costs.

3

4  <center>FIRST CLAIM FOR RELIEF</center>

5  <center>(Intentional Infliction of Emotional Distress)</center>

6  <center>28</center>

7  Plaintiff re-alleges and incorporates each allegation contained in paragraphs 1-27.

8  <center>29</center>

9  The above-described conduct by Klotz constituted an extraordinary transgression of the

10  bounds of socially tolerable conduct, and was intended to cause severe emotional distress, or, in

11  the alternative, was done with knowledge that such distress was substantially certain to result.

12  <center>30</center>

13  This conduct did cause severe emotional distress, including physical illness, to plaintiff,

14  including the consequences set forth in paragraph 27.

15  <center>31</center>

16  Therefore, plaintiff is entitled to economic damages in the amount of $250,000 and

17  noneconomic damages in the amount of $1,000,000.

18

19  <center>SECOND CLAIM FOR RELIEF</center>

20  <center>(Sexual Harassment – State Law)</center>

21  <center>32</center>

22  Plaintiff re-alleges and incorporates each allegation contained in paragraphs 1-27.

23

COMPLAINT – Page 14

**Exhibit 1**
**Page 34 of 38**

33

1          PSU is a place of public accommodation within the meaning of ORS 659A.400(1).

34

         The above-described conduct by defendants constituted the denial of full and equal accommodations, advantages, facilities and privileges in a place of public accommodation on the basis of sex, in violation of ORS 659A.403(3).

35

         Each named defendant aided and abetted each other named defendant, and all of them, in making a distinction, discrimination, or restriction against plaintiff's enjoyment of the public accommodation afforded by PSU on account of sex, in violation of ORS 659A.406.

36

         This denial, distinction, discrimination, or restriction injured plaintiff as described in paragraph 27.

37

         Therefore, plaintiff is entitled to economic damages in the amount of $250,000 and noneconomic damages in the amount of $1,000,000.

THIRD CLAIM FOR RELIEF

(Sexual Harassment – Federal Law)

38

         Plaintiff re-alleges and incorporates each allegation contained in paragraphs 1-27.

39

         PSU receives funds from the United States government in the form of grants and loans to

COMPLAINT – Page 15

Exhibit 1
Page 35 of 38

1    support its students' education.

2                                          40

3         Plaintiff, while a PSU student, was subjected to discrimination based on sex, including

4    sexual abuse and sexual harassment, that was so severe, pervasive, and objectively offensive that

5    it deprived plaintiff of access to the educational opportunities or benefits provided by PSU, in

6    violation of 20 USC §1681 *et seq.*

7                                          41

8         PSU and its agents and employees had actual knowledge of this discrimination.

9                                          42

10        PSU and its agents and employees were deliberately indifferent to this discrimination.

11                                         43

12        This discrimination injured plaintiff as described in paragraph 27.

13                                         44

14        Therefore, plaintiff is entitled to economic damages in the amount of $250,000,

15    noneconomic damages in the amount of $1,000,000, and payment by PSU of her reasonable and

16    necessary attorney fees.

17

18                              FOURTH CLAIM FOR RELIEF

19                                    (Negligence)

20                                         45

21        Plaintiff re-alleges and incorporates each allegation contained in paragraphs 1-27.

22                                         46

23        PSU and its agents had a duty to refrain from hiring and retaining employees who would

COMPLAINT – Page 16

**Exhibit 1**
**Page 36 of 38**

1    sexually harass PSU's students and a duty to supervise its employees in a manner such that they

2    would refrain from sexually harassing PSU's students.

3                                           47

4        The above-described conduct constituted a breach of those duties by PSU.

5                                           48

6        This breach caused injuries to plaintiff as described in paragraph 27.

7                                           49

8        Therefore, plaintiff is entitled to economic damages in the amount of $250,000 and

9    noneconomic damages in the amount of $1,000,000.

10

11                               FIFTH CLAIM FOR RELIEF

12                                     (Retaliation)

13                                           50

14       Plaintiff re-alleges and incorporates each allegation contained in paragraphs 1-27.

15                                           51

16       Klotz's rejection of plaintiff's research paper and subsequent baseless accusations of

17   plagiarism and dishonesty constituted retaliation against plaintiff, as Klotz's actions were

18   calculated to injure and defame plaintiff after plaintiff refused to permit further sexual

19   harassment by Klotz.

20                                           52

21       Klotz's rejection of plaintiff's research paper and subsequent accusations of academic

22   dishonesty caused plaintiff injuries as described in paragraph 27.

23

COMPLAINT – Page 17

Exhibit 1
Page 37 of 38

1           53

2          Therefore, plaintiff is entitled to economic damages in the amount of $250,000 and

3    noneconomic damages in the amount of $1,000,000.

4

5                              PRAYER FOR RELIEF

6                                    54

7          WHEREFORE, plaintiff prays for judgment against defendants Portland State University

8    and Marcia Klotz in the amount of $250,000 in economic damages, $1,000,000 in noneconomic

9    damages, and her reasonable attorney fees and costs and disbursements necessarily incurred

10   herein.

11                                   55

12         FURTHER, plaintiff hereby gives notice of her intent to move to amend this complaint

13   pursuant to ORS 31.725 to add a request for an award of punitive damages against Klotz.

14

15         RESPECTFULLY SUBMTTED August 19, 2013,
16

                                         Bear Wilner-Nugent, OSB #044549
                                         Attorney for Plaintiff

17

COMPLAINT – Page 18

**Exhibit 1**
**Page 38 of 38**